In re **COUNTY FUEL COMPANY, INC.**
**Formerly CLB, Inc., Debtor.**

**Bankruptcy No. 81–2–2208L.**

United States Bankruptcy Court,
Maryland.

April 12, 1983.

Edward L. Blanton, Jr., Towson, Md., for debtor.

Michael L. Woscoboinik, Washington, D.C., for Dept. of Energy.

## MEMORANDUM AND ORDER DENYING THE STAY OF THE ADMINISTRATIVE PROCEEDINGS

JAMES F. SCHNEIDER, Bankruptcy Judge.

This matter came before the Court on February 2, 1983, for a hearing on the Debtor's motion that the Department of Energy ["the Department"] show cause why it should not be stayed from proceeding under a Proposed Remedial Order against the Debtor for alleged violations of the Mandatory Petroleum Price and Allocation Regulations.* The Department contends that its administrative enforcement proceeding falls within the exception to the automatic stay prohibiting actions against the Debtor and its property provided in 11 U.S.C. § 362(b)(4). The Debtor narrowly construes section 362(b)(4) so as to exclude regulatory actions related to pecuniary interests and financial difficulties. The matter was held *sub curia* after the hearing in order to allow the parties to file supplementary memoranda. They have now done so, and upon consideration of the memoranda the stay will be denied.

■ Under the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362(a), any "judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title" is stayed. Certain exceptions to the stay are delineated in section 362(b). The section provides in part:

The filing of a petition under section 301, 302, or 303 of this title does not operate as a stay . . .

(4) under subsection (a)(1) of this section of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; . . .

11 U.S.C. § 362(b)(4).

The parties agree that Congress intended to exclude from the stay actions "where a governmental unit is suing a Debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violations of such a law, . . ." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 343 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6299.

The Debtor, however, argues that a qualification of this exception exists when the government is pursuing a pecuniary interest in the property of the Debtor or the property of the estate. *See* 124 Cong.Rec. H11092 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards). The Debtor relies particularly upon the cases of *Missouri v. U.S. Bankruptcy Court*, 647 F.2d 768 (8th Cir. 1981), and *In re King Memorial Hospital, Inc.*, 4 B.R. 704 (Bkrtcy.S.D.Fla.1980). Such reliance is misplaced because the Debtor construes the qualification of the exception to the stay more broadly than do the cited cases.

In *Missouri*, the Court considered whether state statutory procedure for the operation or liquidation of an insolvent grain warehouseman's business constituted police or regulatory action. The Circuit Court found that the purpose of the statute was to protect the pecuniary interest of the grain depositors, and therefore did not relate to matters within the scope of the

---

* The Emergency Petroleum Allocation Act of 1973, Pub.L. No. 93–159, 87 Stat. 627, codified as amended at 15 U.S.C. §§ 751 *et seq.* (Supp. V.1981) ["the Act"] required the President of the United States to promulgate regulations for the mandatory pricing and allocation of crude oil and refined petroleum products. The purpose of the regulations was to provide for, *inter alia*, the protection of public health, the mainte-

nance of public services and agricultural activities and the equitable distribution of oil and petroleum products. 15 U.S.C. § 753(b); *Pasco, Inc. v. Federal Energy Administration*, 525 F.2d 1391, 1397 n. 17 (Em.App.1975). The regulations required by the Act are known as the Mandatory Petroleum Price and Allocation Regulations and are codified at 10 C.F.R. § 205 and §§ 210–12.

section 362(b)(4) exception. *Missouri,* 457 F.2d at 773, 776. The *Missouri* court distinguished between police and regulatory power actions excepted from the automatic stay and the control of grain elevators at issue in that case: "(T)he term 'police or regulatory power' refers to the enforcement of state laws affecting health, welfare, morals, and safety, but not regulatory laws that directly conflict with the control of the *res* or property by the bankruptcy court." *Id.,* 647 F.2d at 77.

Similarly in *King Memorial Hospital, supra,* the Court found that a statute, by which the State attempted to revoke the debtor's right to build a new hospital without obtaining a certain state permit, was not enacted to protect the public health and welfare. Rather, it was held that the statute was enacted to provide for the efficient administration of the health care services industry. *King Memorial Hospital,* 4 B.R. at 708–09. In both *Missouri* and *King Memorial Hospital,* but not in the instant case, the regulatory action conflicted with the control of property by the bankruptcy court.

In the instant case, the statute and regulations in question were enacted to provide, *inter alia,* for the protection of the public health, safety and welfare through the maintenance of all public services and agricultural operations, and the equitable distribution of oil. 15 U.S.C. § 753(b). In order to execute the Act, Mandatory Petroleum Price and Allocation Regulations as well as administrative procedures and sanctions were adopted. The purposes of the Act and regulations are within the scope of the traditional police powers. *See Pasco,* 525 F.2d at 1394. Accordingly, enforcement of the Department's regulation falls within the section 362(b)(4) exception. *In re Vantage Petroleum Corp.,* 25 B.R. 471, 9 B.C.D. 1248, 1251 (Bkrtcy E.D.N.Y.1982).

The debtor's pecuniary interest argument lacks merit because the debtor fails to prove an ulterior motive on the part of the Department. *In re Lare,* 23 B.R. 545 (Bkrtcy. Md.), *aff'd.* on other grounds, 24 B.R. 959 (D.Md.1982). In *Lare,* this Court held that the motive for a prosecution or regulatory action is crucial to determining whether the exceptions to the stay provided in sections 362(b)(1) and (4) for criminal prosecutions and police power regulation apply in a given case. *Id.,* 23 B.R. at 547.

*Lare* is closely analogous to the instant case. This Court found in *Lare* that the State of Maryland had a legitimate interest in regulating home improvement contractors, since such regulation protects the public. *Id.,* 23 B.R. at 546. Similarly in the instant case, the federal government, by way of the Department, has a legitimate interest in enforcing the regulation of petroleum prices in order to protect the public from over-pricing.

Furthermore, this Court is concerned that if it grants the requested relief, violators of regulatory laws may be encouraged to file in bankruptcy to escape the responsibility for their misdeeds.

■ The Debtors have asked, in the alternative, that the Court stay the administrative proceedings pursuant to this Court's powers under section 105 of the Code. This Court declines to do so for the reasons stated below.

Section 105 of the Bankruptcy Code grants bankruptcy judges the power to "issue any order, process, or judgment that is necessary and appropriate to carry out the provisions of this title." 11 U.S.C. § 105. The sovereign immunity of the federal government is held to be expressly waived under this section. *See Vantage Petroleum,* 25 B.R. 471, 9 B.C.D. at 1251. Thus, a bankruptcy court has the discretion to issue an injunction staying the administrative proceedings of the Department. *Id.*

This Court will not do so on the facts of the instant case. The Department's enforcement action has been proceeding since October of 1980 and the Debtor has been involved in those proceedings since that date. Furthermore, the Department has acknowledged that should it prevail in its effort to obtain a final administrative decision against the Debtor, the decision will merely liquidate its claim. [Opposition to

Debtor's Application to Show Cause at 12–13.] For this reason, the administrative proceedings pose no threat to the jurisdiction of the bankruptcy court. Accordingly, the administrative proceedings of the Department of Energy will not be stayed.

IT IS SO ORDERED.