**In re Michael Theodore SEIDELMAN and Billie Jo Seidelman, Debtors.**

**Michael Theodore SEIDELMAN, Plaintiff,**

**v.**

**The STATE OF TEXAS DISTRICT ATTORNEY for the COUNTY OF NAVARRO, et al., Defendant.**

**Bankruptcy No. 85–B–0398. Adv. No. 85–0253B.**

United States Bankruptcy Court, D. Maryland.

Jan. 15, 1986.

Scott David Britt, for debtor.

David W. Tonnessen, Baltimore, Md., trustee.

John Jackson, Asst. Dist. Atty., Corsicana, Tex., for Navarro County.

## OPINION AND ORDER GRANTING PRELIMINARY INJUNCTION AGAINST CRIMINAL PROSECUTION

JAMES F. SCHNEIDER, Bankruptcy Judge.

This Court granted the debtor a temporary restraining order [P. 6] on August 6, 1985, which enjoined the defendants from continuing a criminal prosecution in a Texas state court against the debtor for a period of ten days. The order also provided that a hearing would be held upon the instant complaint of the debtor for a preliminary and permanent injunction on Sep-tember 6, 1985. The hearing was conducted as scheduled, with Scott David Britt, counsel for the debtor in attendance, and with John Jackson, Assistant District Attorney for Navarro County, Texas, via the telephone. After hearing argument, the Court held the matter *sub-curia* to await the preparation and submission of affidavits and memoranda by the parties and upon the agreement of the Texas prosecutor that the criminal prosecution would be voluntarily stayed in the interim. Based upon the hearing and the papers submitted thereafter, the Court will issue a preliminary injunction.

## FINDINGS OF FACT

1. Michael Theodore Seidelman, the complainant, and Billie Jo Stone Seidelman, his wife, filed a voluntary, joint Chapter 7 bankruptcy petition in this Court on March 15, 1985.

2. The debtors listed as an unsecured creditor the "City National Bank, P.O. Box 1798, Corsicana, Texas 75110," on their A–2 schedule as the holder of an unsecured claim for tools in the amount of $1,457.

3. In their B–4 schedule of exempt property, the debtors listed "tools of the trade used by Michael Seidelman" valued at $1,500 and claimed as exempt pursuant to Md.Cts. and Jud.Proc.Code § 11–504(b)(1).

4. The Court issued an "ORDER FOR MEETING OF CREDITORS AND FIXING TIMES FOR FILING OBJECTIONS TO DISCHARGE AND FOR FILING COMPLAINTS TO DETERMINE DISCHARGEABILITY OF CERTAIN DEBTS, COMBINED WITH NOTICE THEREOF AND OF AUTOMATIC STAY [P. 4] on March 20, 1985, which scheduled the § 341 meeting of creditors for May 2, 1985; established July 2, 1985 as the deadline for filing objections to discharge, objections to exemptions, and complaints to determine dischargeability of debts; and which appointed a bankruptcy trustee. This document was sent to all creditors and parties in interest listed on the matrix submitted by

the debtors at the time they filed their petition.

5. The matrix contains the name of the defendant, the "City National Bank, P.O. Box 1798, Corsicana, Texas, 75110."

6. The said defendant, the City National Bank, was on notice that the instant bankruptcy petition had been filed and that certain time periods had been established by this Court within which to file various objections and/or complaints against the debtor or debtors. The City National Bank did not send a representative to attend the meeting of creditors, nor did it file any pleadings in these proceedings to enforce its claim in the bankruptcy estate.

7. On May 15, 1985, the bankruptcy trustee filed a consent to the debtors' claim of exemptions and a "report of no distribution" [PP. 5 & 6] indicating that there are no assets in this case.

8. On July 10, 1985, this Court issued the debtors a discharge in bankruptcy [P. 8]. On that occasion, the unsecured debt of the City National Bank was discharged.

9. On July 11, 1985, the debtors' estate was formally closed by Order of this Court [P. 9].

10. On August 27, 1985, the debtor, Michael Theodore Seidelman, moved to reopen the case by a motion [P. 10] reciting his "being pursued by a creditor for a debt which was discharged in this proceeding ..." [Motion to Reopen Case.]

11. An order [P. 11] was entered on August 28, 1985 which reopened this case for the "purposes of considering the prayer for injunctive relief filed in Adversary No. 85–0253B."

12. The Motion for Temporary Restraining Order, Preliminary and Permanent Injunction [P. 5] filed herein on August 28, 1985 by Mr. Seidelman against the State of Texas, the District Attorney for Navarro County, Texas, the City National Bank and the Anne Arundel County Sheriff's Department, sought injunctive relief from a criminal prosecution filed in Texas by the City National Bank after the filing of the debtor's bankruptcy petition.

13. The motion charged that the criminal prosecution was instituted in bad faith by the City National Bank, which swore out a warrant in Texas for the arrest of Mr. Seidelman for a violation of Texas Penal Code Sec. 32.33, which provides:

§ 32.33   Hindering Secured Creditors

(a) For purposes of this section:

(1) "Remove" means transport, without the effective consent of the secured party, from the state in which the property was located when the security interest or lien attached.

(2) "Security interest" means an interest in personal property or fixtures that secures payment or performance of an obligation.

(b) A person who has signed a security agreement creating a security interest in property or a mortgage or deed of trust creating a lien on property commits an offense, if with intent to hinder enforcement of that interest or lien, he destroys, removes, conceals, encumbers, transfers, or otherwise harms or reduces the value of the property.

(c) For purposes of this section, a person is presumed to have intended to hinder enforcement of the security interest or lien if, when any part of the debt secured by the security interest or lien was due, he failed:

(1) To pay the part then due; and

(2) if the secured party had made demand, to deliver possession of the secured property to the secured party.

(d) Except as provided in Subsection (e) of this section, an offense under this section is a Class A misdemeanor.

(e) If the actor removed the property, the offense is a felony of the third degree.

14. The punishment for conviction of a third-degree felony in Texas is set forth in Texas Penal Code Sec. 12.34 as follows:

§ 12.34.   Third-Degree Felony Punishment

(a) An individual adjudged guilty of a felony of the third degree shall be punished by confinement in the Texas De-

**152**

partment of Corrections for any term of not more than 10 years or less than 2 years.

(b) In addition to imprisonment, an individual adjudged guilty of a felony of the third degree may be punished by a fine not to exceed $5,000.

15. Mr. Seidelman claims to have left the State of Texas with Mrs. Seidelman in June, 1984, after obtaining a loan in the amount of $2,320.80 from the City National Bank a month before for the purchase of tools.

16. The purpose of their emigration to Maryland was the hope of finding work here since both debtors were unemployed in Texas.

17. The debtors were able to obtain employment in Maryland upon their arrival, as is evidenced by their statement of affairs which states that Mr. Seidelman is presently employed as a carpenter for the Larry Boehm Construction Company in Baltimore, Maryland, and that Mrs. Seidelman is employed as a staff accountant for First Baltimore Asset Management, also in Baltimore.

18. The debtors allege that upon arriving in Maryland, they continued to make payments to the City National Bank on the subject loan. As evidence of such payment, they submitted a photocopy of a cancelled check dated July 6, 1984 signed by Billie Jo Seidelman naming City National Bank as the payee. [Attachment to letter dated October 9, 1985].

19. On August 13, 1984, approximately two months after their move to Maryland, the debtors contracted with the Consumer Credit Counseling Service of Maryland, Inc., located in Baltimore, to help them enter into a repayment schedule with their major creditors. [Letter dated October 31, 1984, from Consumer Credit Counseling to debtors].

20. Payments were made by the debtors through the Consumer Credit Counseling Service, Inc., to the City National Bank after the debtors relocated in Maryland, specifically in September and November, 1984, and in January, 1985. [Letter dated August 21, 1985, from Consumer Credit Counseling to Mrs. Seidelman.] The debtors filed their bankruptcy petition on March 15, 1985.

21. On April 8, 1985, City National Bank swore out an arrest warrant against Mr. Seidelman in Navarro County, Texas.

22. On July 18, 1985, a Navarro County grand jury returned an indictment against Mr. Seidelman under Texas Penal Code Sec. 32.33.

23. Mr. Seidelman was subsequently located in Anne Arundel County, Maryland, and a warrant was issued for his arrest by the Anne Arundel County Sheriff's department.

24. The debtor alleges in his various memoranda that this Court may enjoin the pending criminal prosecution on the strength of 11 U.S.C. § 105 and the decision of this Court [Lebowitz, B.J.] in the case of *In re Taylor,* 16 B.R. 323 (Bankr.D. Md.1981). Unfortunately the debtor's faith in the *Taylor* case is misplaced, because it was reversed on appeal to the U.S. District Court [Kaufman, C.J.]. *Matter of Taylor,* 44 B.R. 548 (D.Md.1984).[*]

25. Nevertheless, this Court issued the temporary restraining order and will issue a preliminary injunction, based upon the following analysis.

CONCLUSIONS OF LAW

■ 1. The joinder of the State of Texas as a party defendant violates the Eleventh Amendment to the U.S. Constitution, which bars suits in Federal court brought against a state by citizens of another state. This flaw is not fatal to the instant cause of action, because it can be cured by dismissing the state from the suit, leaving the

---

[*] Lest it be mistakenly assumed that this Court perceives its role in these cases solely as the protector of debtors to the exclusion of the rights of all others, it ought to be remembered that it is the same bankruptcy court affirmed by District Judge Young in *Lare v. Norton,* 24 B.R. 959 (D.Md.1982), in the *denial* of an injunction against a criminal prosecution for failing to obtain a home improvement license. *See In re Lare,* 23 B.R. 545 (Bankr.D.Md.1982).

District Attorney for Navarro County, Texas, as a proper governmental agent amenable to suit, together with the other named defendants. *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Atascadero State Hospital v. Scanlon,* 473 U.S. ——, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985).

2. This Court is subject to the Anti-Injunction Act, 28 U.S.C. § 2283 (Act of June 25, 1948, c. 646, § 1, 62 Stat. 968.), which provides:

§ 2283. Stay of State court proceedings
    A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

3. In the landmark case of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the U.S. Supreme Court held that in the absence of a "showing of bad faith, harassment, or any other unusual circumstance" to justify the granting of "equitable relief," a Federal court may not enjoin a criminal prosecution pending in a state court. 401 U.S. at 54, 91 S.Ct. at 755, 27 L.Ed.2d at 681.

4. The *Younger* court did not consider whether the Anti-Injunction Act was applicable to the facts in that case, in its prohibition against enjoining state court proceedings "except as expressly authorized by Act of Congress." *Id.,* quoting the statute, 28 U.S.C. § 2283.

5. The United States Bankruptcy Code has been held to be an " 'expressly authorized' exception to the statute. 11 U.S.C. 105(a). *See* S.Rep. No. 95–989, 9th Cong., 2d Sess., reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5815. Prior to 1948, the Anti-Injunction Act contained only one exception, for 'cases where such injunction may be authorized by any law relating to proceedings in bankruptcy.' Judicial Code § 265, 36 Stat. 1162. In 1948, this passage was expanded to cover all statutory exceptions. *See* Reviser's comments to 28 U.S.C. § 2283, 1948 U.S.Code Cong. & Ad.News Special Compilation of Legislative History of Revision of Title 28, 80th Cong., 2d Sess. 1910. *Therefore, under proper circumstances, a bankruptcy court may issue an injunction to prevent a state prosecution."* [Emphasis supplied.] *In the Matter of Davis, sub. nom. Davis v. Sheldon,* 691, F.2d 176, 177–78 (3rd Cir.1982). [Emphasis supplied.]

6. Nevertheless, *Davis* recognized that merely having been granted the power in the Anti-Injunction Act to enjoin a state court prosecution did not justify or authorize its exercise in the absence of due consideration of "principles of equity and comity that must restrain a federal court when asked to enjoin a state court proceeding." *Id.,* at 178, quoting *Mitchum v. Foster,* 407 U.S. 225, 243, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972).

7. Chief Judge Frank A. Kaufman held in *Matter of Taylor, sub nom. Widdowson v. Taylor,* 44 B.R. 548 (D.Md.1984) that a criminal prosecution pending in a Maryland court against a debtor for issuing bad checks should not have been enjoined by the bankruptcy court, where Bankruptcy Judge Harvey M. Lebowitz determined "that the principal motivation behind the criminal prosecution is neither punishment nor a sense of duty, but rather to obtain payment of a dischargeable debt either by an order of restitution or by compromise of the criminal charge upon payment of the civil obligation." Id. at 550. Judge Kaufman rejected the "principal motivation" test in favor of the "bad faith" test of *Younger v. Harris, supra,* and finding no bad faith in the prosecution of Mr. Taylor, reversed Judge Lebowitz and dissolved the injunction.

8. In so doing, Judge Kaufman quoted with approval the oft-quoted statement of Circuit Judge Roney in *Barnette v. Evans,* 673 F.2d 1250 (11th Cir.1982):

    The basic error of the bankruptcy judge was to misjudge the width of his turf. The purpose of bankruptcy is to protect those in financial, not moral, difficulty. The bankruptcy courts were not created as a haven for criminals. See

H.R.Rep. No. 595, 95th Cong., 2d Sess., 343, reprinted in [1978] U.S.Code Cong. & Ad.News 5787, 5963, 6299. There is a public interest in every good faith criminal proceeding, especially on the presentment of a grand jury, which overrides any interest the bankruptcy court may have in protecting the financial interest of debtors.

*Id.,* at 1251.

■ 9. It is precisely with this prologue in mind that the Court will proceed to enjoin the Texas prosecution. Rather than prohibiting the issuance of injunctive relief in the instant case, all of the factual findings and legal conclusions herein require it.

10. As indicated earlier, 11 U.S.C. § 105(a) authorizes a court of the United States to stay an action of a state court as a statutory exception to the Anti-Injunction Act, 28 U.S.C. § 2283. Section 105(a) provides:

§ 105. Power of court.

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

11. The Anti-Injunction Act has even been held to *require* the issuance of an injunction by a Federal court against state court proceedings "where such action is necessary in aid of the federal court's jurisdiction." [Emphasis supplied.] *Federal S. & L. Ins. Corp. v. PSL Realty Co.,* 482 F.Supp. 77 (S.D.Ill.1979). This is found to be the case here.

12. Because the defendant City National Bank has not seen fit to file an answer to the instant complaint (although the Court finds it was properly served), all of the factual allegations levelled against it by the complainant are accepted as true and uncontested.

13. The City National Bank instituted the criminal prosecution in Texas against the debtor in bad faith and solely for the purposes of harassment in retaliation against him for exercising his right to file bankruptcy. The said prosecution was initiated *after* the bankruptcy case was filed. The Bank was on notice of the filing.

14. The Bank's bad faith is evidenced by the following facts: The Bank acquiesced in the debtors' departure from Texas and even accepted payments tendered by them after they had resettled in Maryland. The tendering of payments by the debtors to the Bank would seem to negate a presumption of an intent on their part to hinder the Bank's enforcement of its security interest in the tools.

15. The complete failure of the Bank to come into the bankruptcy court to enforce its rights in the collateral by objecting to the debtors' discharge and/or claim of exemptions as to the tools, or even to complain as to the discharge of its debt, despite its knowledge of the filing of the bankruptcy, is further evidence of its bad faith in prosecuting the debtors criminally in Texas.

16. The Bank was not *per se* prohibited from bringing criminal charges against the debtors during the pendency of the bankruptcy case by reason of 11 U.S.C. § 362(a), because of the following exception set forth in § 362(b)(1):

(b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities, Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), does not operate as a stay—

(1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor[.]

However, the justification for enjoining the criminal prosecution at issue in this case is the Bank's bad faith in commencing it and the enforcement of this Court's jurisdiction in protecting discharged debtors from illegal harassment.

17. For this reason, the indictment returned thereafter on July 18, 1985, by the grand jury of Navarro County, Texas against Mr. Seidelman was tainted.

18. This is just the sort of an "unusual situation" which the Supreme Court left

unspecified in its opinion in *Younger, supra*, which justifies intervention by a Federal court.

19. Based upon the Bank's failure to enforce its rights against the debtors in the bankruptcy court, coupled with the apparently-groundless criminal charges filed against Mr. Seidelman in Texas which would require his physical return to that state to stand trial, this Court concludes as a matter of law that the prosecution was brought in bad faith, and as such, should be enjoined by this Court according to the dictates of *Younger* and *Taylor, supra*.

20. Considerations of comity and equity require that the invalid state court prosecution which was instituted in bad faith to deny the debtor his federally-protected right of a valid bankruptcy discharge be enjoined.

21. The apparent lack of knowledge of the Navarro County prosecutor of the machinations of the City National Bank in bringing this prosecution does not serve to eradicate from it the taint of bad faith and illegality. State action has been improperly invoked to deprive a debtor of his right to an appropriately-granted discharge in bankruptcy.

22. This Court must grant the requested injunctive relief to carry out the provisions of the Bankruptcy Code by guaranteeing the rights of a debtor to the protection of his discharge in bankruptcy and to be free from harassment by a malevolent creditor.

23. The complainant, Mr. Seidelman, has standing to bring the instant suit because he has been indicted by a Texas grand jury, a warrant has been issued for his arrest and he has been threatened with imminent extradition from Maryland to Texas.

24. The harm to be suffered by the complainant if the injunction is not granted is irreparable, reaching constitutional dimensions, and for which he has no adequate remedy at law. *See Wilson v. Thompson*, 593 F.2d 1375 (5th Cir.1979).

25. A preliminary injunction will be issued enjoining the defendants from prosecuting the criminal proceeding pending against Mr. Seidelman in Navarro County, Texas, on the grounds that such relief is expressly authorized by 11 U.S.C. § 105(a), is required by 28 U.S.C. § 2283 as being necessary in aid of this Court's jurisdiction, to protect or effectuate its judgments, and is proper according to the decision of the U.S. Supreme Court in *Younger v. Harris, supra*, and of the U.S. District Court for the District of Maryland in *Matter of Taylor, supra*.

26. The defendants, including City National Bank, may petition the Court to dissolve such injunction within thirty days hereof, after which a hearing shall be scheduled upon such petition. If, after thirty days no such request is forthcoming, a permanent injunction shall issue.

IT IS SO ORDERED.